FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

THORA F.,[1]

                    Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    4:24-CV-05061-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

Due to social anxiety, panic attacks, major depressive disorder, severe

chronic anemia, chronic tendonitis of the left wrist, a floating kneecap in the right

lower extremity, hypothyroidism, post-traumatic stress disorder (PTSD), allergies,

hypertension, hypermobility syndrome, obesity, fibromyalgia, asthma, somatic

symptom disorder, and autism spectrum disorder, Plaintiff Thora F. claims that

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as
"Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER – 1

she is unable to work full-time and applied for supplemental security income

benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ)

on the grounds that the ALJ improperly analyzed the opinions of treating sources

Jason England, ARNP, and Michelle Taylor, ARNP; the ALJ failed to conduct an

adequate evaluation at step three; the ALJ improperly assessed Plaintiff's

credibility; and that as a result of her errors the ALJ failed to conduct an adequate

analysis at step five. As is explained below, the ALJ erred. This matter is

remanded for further proceedings.

## I.    Background

In January 2021, Plaintiff filed an application for benefits under Title 16,[2]

claiming disability beginning January 25, 2021, based on the physical and mental

impairments noted above.[3] Plaintiff's claim was denied at the initial and

reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Donna Walker held a

telephone hearing in July 2023, at which Plaintiff appeared with her

---

[2] AR 235-243,18. Plaintiff also filed a claim for benefits under Title 2 but withdrew

the claim on July 12, 2023, and it was dismissed.

[3] AR 244-251, 275.

[4] AR 135, 147.

representative.[5]  Plaintiff testified, as well as a medical expert and a vocational

expert.[6]

      After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ

found Plaintiff's alleged symptoms were not entirely consistent with the medical

evidence and the other evidence.[8] As to medical opinions, the ALJ found:

- The opinions of medical expert Stephan Podrygula, PhD, to be persuasive

- The opinions of state agency evaluator Richard Borton, PhD, to be persuasive.

- The opinion of state agency evaluator, Eugene Kester, MD, that Plaintiff has no severe mental impairments to be not persuasive.

- The opinions of state agency physicians Cecelia Fry, MD, and Merry Alto, MD, to be persuasive.

- The opinions of consultative examiner Marquetta Washington, ARNP, to be persuasive.

- The opinions of Jason England, ARNP, to be unpersuasive.

---

[5] AR 45-87.

[6] *Id.*

[7] AR 15-39.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines

whether a claimant is disabled.

[8] AR 24-28.

- The opinions of Michelle Ann Taylor, ARNP, to be unpersuasive.[9]

The ALJ also considered the statement of Plaintiff's cousin and found it to be unpersuasive.[10] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 25, 2021, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: knee degenerative joint disease, left wrist tendonitis, hypothyroidism, anemia, fibromyalgia, asthma, allergies, hypertension, hypermobility syndrome, obesity, major depressive disorder, generalized anxiety disorder, somatic symptom disorder, autism spectrum disorder and post-traumatic stress disorder (PTSD).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and specifically considered Listing 1.18, 3.03, 7.05, 12.04, 12.06, 12.07, 12.10, 12.15, 14.09, and SSRs 12-2p, 14-3p, and 19-2p.

- RFC:  Plaintiff had the RFC to perform medium work with the following exceptions:

  Plaintiff should avoid concentrated exposure to extreme cold, noise, fumes, odors, dust, gases or poor ventilation. Plaintiff has

---

[9] AR 28-30.

[10] AR 30.

the ability to understand, remember or apply information that is simple and routine, as well as detailed. Plaintiff would work best in an environment in proximity to, but not close cooperation, with co-workers and supervisors, but does have the ability to interact appropriately in the work setting. Plaintiff has the ability to interact with the public on a brief, superficial basis, defined as up to twenty-five percent of the workday. With legally required breaks (i.e., two-hour increments), Plaintiff has the ability to concentrate, persist and maintain pace. Regarding the ability to adapt or manage; Plaintiff would work best in an environment that is routine and predictable, with goals set by others, but does have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a janitor (DOT 381.687-018), laborer, stores (DOT 922.687-058), and laundry laborer (DOT 361.687-018).[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[12]

---

[11] AR 21-32.

[12] AR 228.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[13] and such error impacted the nondisability determination.[14] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

## III.    Analysis

Plaintiff seeks relief from the denial of disability on four grounds. She argues the ALJ erred when evaluating the medical opinions, erred in assessing her

---

[13] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[14] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[15] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

subjective claims, and erred in her step three analysis.[16]  As is explained below, the

Court concludes that the ALJ consequentially erred in her evaluation of the

medical opinion evidence.

## A.    Medical Opinion: Plaintiff establishes consequential error

Plaintiff argues that the ALJ erred in her evaluation of the medical

opinions.[17] Specifically, Plaintiff first argues that the ALJ erred in finding that the

opinions of Jason England, ARNP, were unpersuasive "by rejecting them with

nothing more than a boilerplate finding that fails to offer a substantive basis for

her conclusion."[18] Plaintiff also argues that the ALJ erred in rejecting Michelle

Taylor, ARNP's opinion because she erred in her evaluation of the consistency and

supportability of ARNP Taylor's opinions.[19]

---

[16] Plaintiff also avers that these errors resulted in an improper determination at

step five.

[17] An ALJ must consider and articulate how persuasive she found each medical

opinion, including whether the medical opinion was consistent with and supported

by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022).

[18] ECF No. 8, p. 8.

[19] ECF No. 8, p 13.

1

      1.    <u>Standard</u>

2

      The ALJ was required to consider and evaluate the persuasiveness of the

3

medical opinions and prior administrative medical findings.[20] The factors for

4

evaluating the persuasiveness of medical opinions and prior administrative

5

medical findings include, but are not limited to, supportability, consistency,

6

relationship with the claimant, and specialization.[21] Supportability and consistency

7

are the most important factors,[22] and the ALJ must explain how she considered the

8

supportability and consistency factors when reviewing the medical opinions and

9

support her explanation with substantial evidence.[23] The ALJ may consider, but is

10

not required to discuss the following additional factors: the source's relationship to

11

Plaintiff such as length of the treatment, purpose of the treatment relation and

12

whether the source examined Plaintiff, as well as whether the source had advanced

13

training or experience to specialize in the area of medicine in which the opinion

14

15

_____

16

[20] 20 C.F.R. § 416.920c(a), (b).

17

[21] 20 C.F.R. § 416.920c(c)(1)–(5).

18

[22] *Id.* § 416.920c(b)(2).

19

[23] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must

20

articulate . . . how persuasive it finds all of the medical opinions from each doctor

21

or other source and explain how it considered the supportability and consistency

22

factors in reaching these findings.") (cleaned up).

23

1    was being given.[24] When considering the ALJ's findings, the Court is constrained to

2    the reasons and supporting explanation offered by the ALJ.[25]

3          2.    <u>Plaintiff's Testimony</u>

4          Plaintiff testified that she was born in 1981, that she had a GED, and that

5    she obtained a CNA certificate.[26]  She said she had not worked since 2021 and that

6    her support included help from her mother, child support, SSI for her children, and

7    food stamps.[27] Plaintiff said that in 2004 she tried working at a Goodwill after her

8    mother set her up to volunteer with the chance to be hired.[28] She said that the

9    manager trained her when she was a volunteer but after she was hired she was

10   given less direct supervision and had problems.[29] She said that when there was no

11   one directly supervising her any longer she had a problem staying on task,

12   knowing what to do, interacting with co-workers, and interacting with the public.[30]

13   When she is working, she will get anxious and panic and when she didn't have

14

15   [24] *Id.*

16   [25] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

17   review is constrained to the reasons the ALJ gave).

18   [26] AR 77.

19   [27] *Id.*

20   [28] AR 78-79.

21   [29] AR 79.

22   [30] AR 80.

23

DISPOSITIVE ORDER - 9

anyone to support her on the job she broke down and could not function and was fired.[31]

Plaintiff said that in 2007 her mother arranged for her to volunteer in a nursing home and to take CNA classes and when she completed the class her mother got her hired at the nursing home.[32] Her mother worked in the same nursing home and would help her when they were stationed together or check on her when they were not.[33] She also had a friend working there who was able to help her when her mother could not.[34] She said that the friend and her mother would calm her when she was upset and that when her mother retired she could not continue working there.[35] She does not think she could work there now and for the last two years she has panic attacks daily but her mother or friends help her calm down.[36]

Plaintiff said she was diagnosed with autism at the Responding to Autism Center but had tried for a long time to get an evaluation and had waited on a waiting list for a year with another agency before she was able to be seen by ARNP

---

[31] *Id.*

[32] *Id.*

[33] AR 81.

[34] *Id.*

[35] AR 82.

[36] *Id.*

Michelle Taylor.[37] She said she takes things literally and misses cues that others pick-up on so her feelings are hurt a lot. Plaintiff said she tends to ruminate on things for years and that interactions take a toll on her.[38] She said she feels the need to do things repetitively such as play a song or video.[39]

Plaintiff stated that when she has a bad day her mother helps a bit but cannot help as well as she used to.[40] She said that her fibromyalgia pain varies and that when she has a flare she is in bed for more than half the day.[41] She said she has flares every other day and that she gets depressed that she can't function and gets anxious that it will worsen.[42] She said she has difficulty concentrating and will play audio books over and over because she cannot pay attention.[43]

Plaintiff testified that her son is 11 and her daughter is 17.[44] Her daughter is in online school.[45]

---

[37] AR 83.

[38] *Id.*

[39] AR 84.

[40] *Id.*

[41] *Id.*

[42] AR 85.

[43] *Id.*

[44] AR 86.

[45] *Id.*

3. <u>Medical Opinions</u>

a. <u>*Physical impairments*</u>

On June 28, 2023, ARNP England completed a Medical Source Statement.[46] ARNP England said that he first saw Plaintiff on June 14, 2021, and last saw her on June 28, 2023, and that Plaintiff had seen a psychologist for years before establishing care with him.[47] He said that her symptoms were panic/anxiety attacks, chronic pain in multiple sites and fibromyalgia; and that clinical findings included X-rays and MRIs.[48] ARNP England said that Plaintiff would need to lie down or elevate her legs for a couple hours a day due to feeling tried or pain; that Plaintiff was being treated by a psychiatry specialist and an orthopedic specialist; that Plaintiff's medications cause tiredness; that Plaintiff is reasonably expected to feel pain from her fibromyalgia, chronic pain, and psychological impairments; and that working on a regular continuous basis would cause her condition to deteriorate.[49] He opined that if working full-time Plaintiff would miss four days of work a month, that Plaintiff is limited to work at the light exertional level, and

---

[46] AR 1399-1401.

[47] AR 1399.

[48] *Id.*

[49] *Id.*

that Plaintiff can frequently reach, handle, and finger with her upper extremities.[50]

ARNP England opined that Plaintiff would be off task for over 30% of the time, and

that the limitations noted by him existed since at least December 31, 2017.[51]

ARNP England stated that Plaintiff sees a psychological specialist and that if more

infomation was needed it might be helpful to reach out to them, and that he had

treated Plaintiff for just two years.[52]

        *b.*    *Mental impairments*

On January 30, 2023, ARNP Michelle Taylor completed a psychiatric

evaluation of Plaintiff.[53] ARNP Taylor found that on examination Plaintiff had a

depressed affect and was easily distracted.[54] ARNP Taylor found that Plaintiff met

3 of the 3 criteria for the A factor in consideration of autism spectrum disorder,

deficiency in social communication, with a severity level that Plaintiff required

level one (the lowest level) support services.[55] ARNP Taylor also found that

Plaintiff met 2 of the 4 criteria for the B factor in consideration of autism spectrum

disorder, restricted and repetitive patterns of behavior, with a severity level that

---

[50] AR 1400.

[51] AR 1401.

[52] *Id.*

[53] AR 1206-1217.

[54] AR 1212-1213.

[55] AR 1213.

Plaintiff required level one (the lowest level) support services.[56] On the basis of her examination of Plaintiff, ARNP Taylor opined that she met the criteria to be diagnosed with Autism Spectrum Disorder, without intellectual impairment or language impairment; and with depression, anxiety, and PTSD.[57] ARNP Taylor opined as follows: "[Plaintiff] has significant deficits in social communication and interaction, as well as repetitive behaviors and interests. These deficits have caused her impairments in social functioning, occupational functioning, as well as impairment in ability to carry out ADLs without sufficient support of her mother.[58]

4.    Analysis

a.    *The ALJ's consideration of ARNP England's opinions*

The ALJ found ARNP England's opinions to be unpersuasive and articulated the following reasoning:

> I find the opinion of Jason England, ARNP, as unpersuasive that the claimant would need to lay down a couple times a day with her missing over four days of work a month (Exhibit 22F). He supported his findings with a diagnosis of fibromyalgia and concerns with her mental health, but also noted that he was not treating her mental health, which would limit his persuasiveness. In addition, treatment notes indicate few evaluations from Nurse England concerning her physical functioning, beyond noting the claimant's complaints with his focus on her TSH levels related to her hypothyroidism and anemia, which again would not support his conclusions (Exhibits 14F/8; 15F/12; 21F/27, 36, 50). Furthermore, his mental health conclusions are inconsistent with treatment notes, Dr. Podrygula [sic] (Exhibits

---

[56] *Id.*

[57] AR 1213-1214.

[58] AR 1214.

2F/56, 65, 68, 121; 5F/7, 14; 6F/9; 10F/12; 11F/16; 12F/4, 6, 9, 16, 21, 24; 14F/22; 15F/10; 18F/9; 20F/11, 16, 27, 38, 51, 96). In addition, treatment notes give no indications the claimant needed to lay down during the day with her generally noted with good strength and as physically active (Exhibits 5F/7-8, 13-14; 6F/9; 12F/21; 13F/5- 6; 15F/7; 21F/52).[59]

Initially, the Court concludes that the ALJ misinterpreted ARNP England's statements regarding his familiarity with Plaintiff's mental health conditions. ARNP England noted that Plaintiff had first treated with him in June 2021 and last treated in June 2023 and went on to state in the same sentence that Plaintiff "saw [a psychiatrist] for years before establishing care with me."[60] He later repeated that Plaintiff saw a psychiatric specialist and suggested reaching out to them if more information was necessary and said that he had "known [Plaintiff] myself for just two years now."[61]  The Court does not interpret his statements to deny knowledge of Plaintiff's mental health conditions.

ARNP England is Plaintiff's primary medical source and is familiar with her treatment as a whole.  The Court interprets ARNP England's statement to indicate that he is familiar with Plaintiff's mental health treatment in general but that her specialist is able to provide additional information regarding the period prior to June 2021, when she started treatment with him.

---

[59] AR 29-30.

[60] AR 1399.

[61] AR 1401.

1    As to the remainder of ALJ's analysis of ARNP England's opinions, the

2    Court is concerned with the fact that the ALJ did not address ARNP England's

3    opined limitation to light work and to frequent use of the upper extremities for

4    handling, fingering, and feeling.[62]  The failure to address the opined limitation to

5    light work is significant because the basis of any formulated RFC begins with the

6    exertional level to which a Plaintiff is limited, ranging from sedentary at the lowest

7    level of exertion and very heavy at the highest level of exertion.[63]  The ALJ's failure

8    to discuss ARNP England's opined limitation of light exertional work is

9    consequential because the ALJ's formulated RFC limits Plaintiff to the higher

10   exertional level of medium.  Moreover, each of the jobs cited at step five are

11   medium in exertion.[64]

12    The ALJ must articulate her findings and cite to supporting evidence in a

13   way that permits the Court to meaningfully review the ALJ's findings.[65]  While an

---

15   [62] AR 29-30.

16   [63] 20 C.F.R. § 416.967.

17   [64] AR 32.

18   [65] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849

19   F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence

20   supporting the found conflict to permit the court to meaningfully review the ALJ's

21   finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the

22   ALJ to build an accurate and logical bridge from the evidence to her conclusions so

ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[66]

Additionally, the ALJ failed to address the opined limits placed on Plaintiff's use of her upper extremities.  This is also consequential because the ALJ found that chronic tendonitis of the left wrist was a severe impairment.[67]  Moreover, when considering the persuasiveness of the opinions of consultative examiner Marquetta Washington, ARNP, and the state agency evaluators Merry Alto, MD, and Cecelia Fry, MD, she noted that none had not given "sufficient consideration to her hypothyroidism, knee degenerative joint disease, left wrist tendonitis, anemia, fibromyalgia, allergies, hypertension or hypermobility syndrome, some of which were noted after their evaluation. . ."[68]  Here, the ALJ acknowledged twice that Plaintiff suffers a severe impairment involving at least one of her upper extremities but made no provision in her formulated RFC for a limitation in the use of Plaintiff's upper extremity or extremities, and did not address that a treating source opined to such a limitation.

---

that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[66] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

[67] AR 21.

[68] AR 29.

Because the ALJ failed to address these two limitations opined to by ARNP England in any meaningful way, it is not possible for the Court to determine whether the ALJ properly considered ARNP England's opinions.

Additionally, the Court agrees with Plaintiff's argument that the ALJ erred in rejecting ARNP England's opined limitation that Plaintiff would need to lie down.[69] The ALJ reasoned that ARNP England supported his limitation to lying down with "a diagnosis of fibromyalgia and concerns of her mental health" but that Plaintiff's treatment notes were unsupportive of ARNP England's opinion as they indicate a focus on Plaintiff's TSH levels related to her hypothyroidism and anemia."[70]

There are a few reasons that the ALJ erred in her reasoning.  First, the ALJ was incorrect that ARNP England cited fibromyalgia or mental health as a reason Plaintiff needed to lie down because ARNP England specifically explained that Plaintiff would need to lie down during the day due to tiredness.[71] Additionally, it would make sense for ARNP England to cite to evidence of anemia to support his finding that Plaintiff would need to lie down due to tiredness. As Plaintiff points

---

[69] ECF No. 8, citing to AR 29-30.

[70] AR 29-30.

[71] AR 1399.

out in her brief, the primary symptom of anemia is fatigue.[72]  There is no question

that Plaintiff suffers from anemia and the ALJ accepted and acknowledged that

Plaintiff's anemia was a severe impairment.[73] Moreover, the ALJ failed to

acknowledge that when addressing the side effects of Plaintiff's medications, ARNP

England also stated that Plaintiff suffered "some tiredness with some of the

[medications]."[74]

    The Court concludes that remand is warranted for the ALJ to properly

consider ARNP England's opinions and to evaluate the record as a whole, including

the effects of Plaintiff's anemia and tendinosis of the left wrist.

        *b.*     <u>*The ALJ's consideration of ARNP Taylor's opinions*</u>

    The ALJ articulated her reasoning that ARNP Taylor's opinions were

unpersuasive as follows:

> I find the opinion of Michelle Ann Taylor, ARNP, as unpersuasive
> (Exhibit 18F/15). Although she noted the claimant with a diagnosis of
> autism with impairments in social functioning and occupational
> functioning, she also noted the claimant was seeing a psychiatrist who
> would have addressed her autism and had reservations about giving
> the evaluation, which would not support her conclusions (Exhibit
> 18F/6). In addition, the claimant was previously noted as undertaking
> autism testing that was found inconclusive, which would be
> inconsistent with this finding (Exhibit 4F/1). Her own therapist noted
> concerns with the claimant be highly focused on getting an autism

---

[72] Mayo Clinic, *Anemia - Symptoms and causes* – www.MayoClinic.com. (last

viewed October 28, 2024.)

[73] AR 21.

[74] AR 1399.

1

2

3

4

5

6

diagnosis, which does raise concerns as well, despite no indications that such finding was inappropriate (Exhibit 12F/2, 12, 14). Similarly, Dr. Podrygula noted some concerns with this evaluation and the ultimate findings, despite also concluding the claimant did have moderate social limitations. Ultimately treatment notes do indicate the claimant as anxious and depressed with a flat affect at times, but more often that she was engaged and cooperative with a normal affect and mood, which would not prevent occupational social or occupational functioning as noted by Dr. Podrygula (Exhibits 2F/56, 65, 68, 121; 6F/9; 10F/12; 11F/16; 12F/4, 6, 9, 16, 21, 24; 14F/22; 18F/9; 20F/11, 16, 27, 38, 51, 96).[75]

7

8

9

10

11

12

13

Plaintiff argues that the ALJ erred in her reasoning because despite ARNP Taylor's initial statement that an evaluation was not necessary in part because Plaintiff had failed a screening test, she performed a test when she later learned the screening was inconclusive and testing was recommended.[76]  She also argues that the ALJ erred in relying upon the testimony of the medical expert, Stephan Podrygula, PhD, because his testimony was not supported by the longitudinal record.[77]

14

15

16

Because the Court has already found reason to remand the case for further proceedings, this issue is somewhat moot.  The Court will only briefly address this issue to offer guidance when the medical opinions are reevaluated on remand.

17

18

The Court agrees with Plaintiff that the ALJ erred in finding fault that ARNP Taylor's initial opinion that testing was not called for changed when she

19

20

21

22

23

---

[75] AR 30.

[76] ECF No. 8.

[77] Id.

later learned that Plaintiff had a positive rather than negative initial screening and more importantly once she tested Plaintiff for Autism Spectrum Disorder and she found that Plaintiff met the testing criteria for the disorder with a need for level one services.[78] First, ARNP Taylor explained adequately why her opinion regarding the appropriateness of testing changed and gave a valid reason that she had not understood the results of screening.[79]

Moreover, ARNP Taylor conducted what appeared to be a thorough test of Plaintiff and found that she met 3 of the 3 criteria for the A factor in consideration of autism spectrum disorder and met 2 of the 4 criteria for the B factor in consideration of autism spectrum disorder.[80] There is no evidence that ARNP Taylor was unduly influenced by Plaintiff in any way, nor did she indicate that Plaintiff was not truthful in answering questions. ARNP Taylor noted that during her interview Plaintiff was cooperative but withdraw, tense, hypoactive, with a flat affect and a perpetual grimace with little facial expression and had very little inflection in her voice and had a circumstantial and tangential thought process.[81] She also noted that Plaintiff had fair insight and severely impaired judgment.[82]

---

[78] AR 1213.

[79] AR 1206.

[80] AR 1213.

[81] AR 1208.

[82] AR 1209.

1    Dr. Podrygula, the medical expert, testified that he saw that at Plaintiff's

2   initial screening for autism there was an indication that the screening results were

3   inconclusive and that further testing was recommended.[83] He stated that he was

4   "not totally sold" on the diagnosis of autism because Plaintiff had intensive therapy

5   and autism had not been raised as an issue until she expressed concerns about it

6   but stated that he would give ARNP Taylor's diagnosis "the benefit of the doubt."[84]

7   While Dr. Podrygula expressed some concern that the issue of autism had not been

8   raised before, he did not question ARNP Taylor's credentials or testing and

9   ultimately credited her finding as valid. While the ALJ accepted ARNP Taylor's

10  finding as valid for purposes of her step-three evaluation, she questioned it when

11  evaluating ARNP Taylor's opinions.

12   Because the case is remanded for further proceedings the Court suggests

13  that the Commissioner schedule a consultative examination with formal testing to

14  determine the limitations imposed by Plaintiff's autism spectrum disorder.

---

[83] AR 56.

[84] *Id.*

5.    <u>Summary</u>

Because the ALJ did not give good reasons for her evaluation of the medical opinions of ARNP England, a remand is warranted.

**B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints. As discussed above, the ALJ failed to consider the medical record as a whole when considering the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**C.    Step-Three Evaluation: The Court finds the issue moot.**

Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the Plaintiff's impairments at step three.

**D.    Step-Five Evaluation: Plaintiff establishes consequential error.**

Because the ALJ erred in her evaluation of the medical opinions, the Court cannot be certain that her findings at step five were not without error.

**E.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award

benefits, is within the discretion of the court."[85] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[86]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the opinion evidence and make findings at each of the five steps of the sequential evaluation process.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[85] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[86] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1   IT IS SO ORDERED. The Clerk's Office is directed to file this order and

2 provide copies to all counsel.

3   DATED this 30th day of October 2024.

4

        _____

5          EDWARD F. SHEA
        Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23